### FOX *v.* WALKER.

A contract to pay a certain sum upon the receipt of specified funds is not broken by a failure to pay upon the receipt of a part of the funds.

ASSUMPSIT, on the following instrument: "Nashua, N. H., Oct. 13, 1881. This is to certify that James G. Walker is indebted to Samuel I. Fox in the sum of fifty-six dollars, said sum to be paid to said Fox upon receipt of funds now held by the Arlington Mills by a writ in favor of said James G. Walker, and against one David Hambleton & Co." Signed by the defendant. Facts found by a referee. Before October 13, 1881, one Hambleton was indebted to

Walker in the sum of $91, and Hambleton claimed a set-off to a part. The plaintiff offered to show the true state of the account between Walker and Hambleton, but the referee excluded the evidence. Walker had commenced a suit against Hambleton in Massachusetts, and trusteed the Arlington Mills. Hambleton was also indebted to Fox. It was understood by Walker and Fox that the latter could probably induce Hambleton to give an order on the Arlington Mills for the funds they held, and save the expense of a trial in Massachusetts. Walker agreed with Fox that if he would get an order from Hambleton for $91 upon the Arlington Mills, he would pay him out of the proceeds of such order $56. Fox induced Hambleton to give the order for $91, and Walker signed the instrument in suit. Both parties expected and understood that the order would be paid in full. The order was sent to the Arlington Mills for acceptance and payment. It came back dishonored, the trustees alleging that other parties had caused trustee process to be served upon them, and that they could only pay by compromise the sum of $62. Thereupon Walker, without the aid of Fox, procured an order from Hambleton on the Arlington Mills for $62, which amount was paid to Walker, less $8.20 counsel fees. A demand for the payment of $56 was made by the plaintiff upon Walker after he received the $53.80. The parties, at the time of the execution of the instrument, understood the word " funds " to mean the $91 supposed to be held by the trustee process which Walker had instituted. After the order for $91 was returned dishonored, the defendant gave immediate notice of that fact to the plaintiff, by whom nothing was done toward procuring another order. The court ordered judgment on the report for the defendant, and the plaintiff excepted.

*C. R. Morrison*, for the plaintiff. (1) The promise may have been inconsiderate, but it rests upon a sufficient legal consideration. *Flannagan* v. *Kilcome*, 58 N. H. 443. (2) There was no failure of consideration. Fox did all he agreed. His part was done when he procured the order. (3) There is nothing to justify a finding that nothing was to be paid unless $91 was collected. If the report, in what it says as to " funds," is to be understood as so finding, it is against law and evidence. (4) The instrument is a contract, and cannot be contradicted. *Scammon* v. *Scammon*, 28 N. H. 419, 433, 435. (5) Upon the written contract $56 was to be paid " upon the receipt of funds now held by the Arlington Mills by [means of] a writ in favor," etc. It does not say what is the amount of funds to be received, upon the receipt of which the $56 is to be paid. The time of payment is, when whatever funds obtained by reason of the trustee suit are received. And the fact that $91 was expected to be so received cannot interpolate a condition not contained in the instrument. (6) Nor is there any such condition, looking only to the verbal contract, which was merged in the other.

By the verbal contract, Walker was to pay $56 " out of the proceeds of the order." This imposes no condition that the proceeds shall be $91. At the most, it would only require enough to pay the $56. Walker received $62 from the trustee. The fact that it cost him $8.20 to get it does not alter the case. This was his business. Fox was not to be at any expense. (7) For aught that appears, $91 could have been had. Walker, upon his own motion, obtained another order, and " compromised." He could not evade his contract to his own advantage and the plaintiff's loss in that way: $91—$56=$35. By his compromise he got $53.80 and expenses, or a clear gain of $18.80.

*E. S. & H. A. Cutter*, for the defendant.

CARPENTER, J. By the terms of the agreement, Walker obligated himself to pay the plaintiff $56 upon the receipt by Walker of the funds of Hambleton in the hands of the Arlington Mills then held by Walker's writ against Hambleton and the Arlington Mills as trustees. In order to recover, it was necessary for the plaintiff to show what the funds were, and that the defendant had received, not a part, but the whole of them. It must be taken, upon the facts stated, that at the time of the agreement the Arlington Mills were indebted to Hambleton in the sum of $91 at least, their objection to paying the order being not that they did not owe Hambleton so much, but that other parties had caused trustee process to be served upon them. The sum of $91 constituted the funds mentioned, and was held by Walker's writ, within the meaning of the contract. By his attachment of the funds, he had acquired a lien upon them. It is immaterial that others had also attached them, or that his attachment must ultimately have failed or been dissolved for any cause, as if, for example, the funds were exempt from attachment. If the defendant had agreed to pay the plaintiff a specified sum upon receipt of a good title to the horses held by attachment on his writ against Hambleton, and it appeared that three horses were attached, the fact that one of them was held upon a prior attachment, was exempt, or that for any reason no title to it could be given, would not render him liable upon the receipt of a title to two horses.

Evidence of the state of the account between Walker and Hambleton was properly excluded.

*Exceptions overruled.*

STANLEY, J., did not sit: the others concurred.